## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.P., W.P., and A.W.**

**No. 18-0048** (Barbour County 16-JA-71, 72, and 75)

**FILED**

**June 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.W., by counsel Ashley V. Williams-Hunt, appeals the Circuit Court of Barbour County's October 18, 2017, order terminating her parental rights to K.P., W.P., and A.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Allison C. Iapalucci, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and terminating her parental rights instead of employing a less-restrictive alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On September 15, 2016, the DHHR filed an abuse and neglect petition against petitioner in regard to K.P. and W.P., following an incident wherein one of the children was taken to the hospital for bruising.[2] The petition also alleged that petitioner had a history of methamphetamine use and that she lived with an individual with an extensive criminal history in 2013. The petition further alleged that during the Child Protective Services ("CPS") investigation, the "information-gathering process became overrun by the involvement of the paternal grandmother." The DHHR alleged in the petition that the paternal grandmother of K.P. and W.P. filed protective orders against petitioner and other parents involved in the proceedings and that "the children have been put directly in the midst of the confrontation between the adults."

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner was pregnant with A.W. at this time.

1

On September 26, 2016, the circuit court held a preliminary hearing at which the circuit court found that petitioner and her family members had several protective orders filed amongst them. The DHHR advised that the paternal grandmother had filed a protective order and, due to her interference with the CPS investigation, requested that she have no direct or indirect contact with the children. The circuit court granted the DHHR's motion and found that the paternal grandparents had "created many issues and obstacles." The circuit court ordered, among other things, that petitioner was "not to discuss any allegations contained within the petition with the children," that "[t]he extended family shall have no contact or involvement in this instant case with the exception of the relative foster kinship placements," and that if the paternal grandparents "make or attempt to make contact with the minor children, the [DHHR] shall be notified immediately."

Following the birth of petitioner's third child, A.W., the DHHR filed an amended abuse and neglect petition in regard to that child on November 9, 2016. The petition alleged that there was an ongoing abuse and neglect proceeding involving petitioner's two older children, and that the child's father was also involved in the child abuse and neglect proceedings involving A.W. On November 28, 2016, the circuit court held a preliminary hearing in regard to the abuse and neglect petition involving A.W. and an adjudicatory hearing as to all three children. Petitioner filed a voluntary stipulation to the allegations of abuse and neglect of all three children, specifically admitting to her failure to protect the children. The circuit court accepted her stipulation. At the hearing, the DHHR presented evidence that the paternal grandmother continued to interfere with the proceedings and that she posted about the case and shared pictures of the children on social media. Petitioner also informed the circuit court that she brought her two sisters and mother to a visit and that they posted pictures of the children on social media. The circuit court admonished petitioner for allowing pictures of her children to be posted on social media. The circuit court further noted that it would "take action" if it found out that any further information regarding the proceedings was disseminated. Based on this evidence, the circuit court adjudicated petitioner as an abusing parent and granted her a three-month post-adjudicatory improvement period. The circuit court further ordered that the paternal grandmother was not to have contact with the children, "of either a direct or indirect manner."

On June 14, 2017, the circuit court held a dispositional hearing at which A.W.'s father was questioned regarding a letter he sent to the circuit court alleging that petitioner discussed the case on social media, that she exposed A.W. to drug dealers and drug users, and that she was in constant contact with the paternal grandmother. Petitioner testified that she and the paternal grandmother did not get along and that she probably wanted to cause trouble for petitioner in court. Petitioner said that she had not interacted with the paternal grandmother in "many months." Additionally, petitioner testified that, to avoid any potential problems with social media, she closed her social media accounts. Lastly, petitioner testified that A.W. was around drug dealers in December of 2016 or January of 2017, but had not been around them since. Petitioner moved for a six-month post-dispositional improvement period, which the circuit court held in abeyance in order to determine the extent of the communication and contact between petitioner and the paternal grandmother.

On October 17, 2017, the circuit court held a final dispositional hearing wherein both the guardian and the DHHR moved for termination of petitioner's parental rights. Petitioner renewed

2

her request for a post-dispositional improvement period. A CPS worker testified that petitioner failed to comply with the terms and conditions of her post-adjudicatory improvement period, specifically, that she did not obtain suitable housing for herself and her children. Additionally, the CPS worker explained that petitioner was dishonest with the multidisciplinary treatment ("MDT") team regarding her communications with the paternal grandmother. The CPS worker testified that on June 15, 2017, she met with the paternal grandmother, her attorney, a DHHR worker, and counsel for the DHHR. At this meeting, social media messages were turned over to the DHHR that clearly evidenced that petitioner was communicating with the paternal grandmother. The messages contained promises regarding when petitioner would have her children again. In the messages, petitioner also expressed her concern that the circuit court would find out about her communication with the paternal grandmother. The messages also contained photographs of the children. The CPS worker further testified that ongoing issues with petitioner's dishonesty were outlined in her psychological evaluation. Lastly, the CPS worker explained that, although petitioner completed parenting classes with success and had negative drug screens throughout the proceedings, her dishonesty prohibited a change in her behavior. Petitioner admitted to communicating with the paternal grandmother throughout the proceedings and sending her pictures of the children. She acknowledged that the communication was against her better judgment and also against the express orders of the circuit court. A.W.'s father testified that he was concerned for the safety of his child because petitioner allowed her to be at a "tattoo party," as evidenced by pictures on social media.

The circuit court discussed concerns with petitioner's history of unstable housing and noted that stable housing continued to be a concern. The circuit court further discussed petitioner's dishonesty regarding her communication with the paternal grandmother. The circuit court noted that it was "impossible to implement services for [petitioner] when she won't even tell the truth in [c]ourt under oath." The circuit court further found that petitioner failed to comply with the terms and conditions of her post-adjudicatory improvement period and willfully violated the circuit court's orders on multiple occasions. Based upon the evidence, the circuit court found no reasonable likelihood that petitioner could correct conditions of abuse and neglect in the near future and found it in the children's best interests to terminate petitioner's parental rights. Ultimately, the circuit court terminated petitioner's parental rights in its October 18, 2017, order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a

---

[3]According to the DHHR and the guardian, K.P. and W.P. are in the full custody of their non-abusing father. As A.W.'s father's abuse and neglect case is ongoing, A.W. is currently placed with her maternal aunt. The permanency plan for A.W. is reunification with her father pending successful completion of his improvement period, and the concurrent permanency plan is adoption by her maternal aunt.

reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in terminating her parental rights because she substantially complied with the terms of her post-adjudicatory improvement period and because there was a reasonable likelihood that she could substantially correct the conditions of abuse and neglect. We disagree.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" Here, petitioner failed to substantially comply with the terms and conditions of her post-adjudicatory improvement period because she continued to communicate with the paternal grandmother and share pictures of the children with her, despite direct orders from the circuit court not to do so. Further, petitioner was dishonest with the MDT team and the circuit court regarding these communications. The circuit court noted at the dispositional hearing that it was "impossible to implement services for [petitioner] when she won't even tell the truth in [c]ourt under oath." Additionally, the record shows that petitioner had a history of unstable housing and the circuit court found that petitioner had not demonstrated an ability to secure stable housing during these proceedings. Lastly, evidence was presented that pictures of A.W. at a "tattoo party" were posted on social media, despite the circuit court's warnings regarding social media. Based on this evidence, it is clear that petitioner failed to comply with the terms and conditions of her post-adjudicatory improvement period, that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future, and that termination was in the children's best interests. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

Next, petitioner argues that the circuit court erred in terminating her parental rights without first granting her a post-dispositional improvement period. In support of this argument, petitioner argues that by substantially complying with her post-adjudicatory improvement period, she has had a substantial change in circumstances to warrant receiving a post-dispositional improvement period. We find this argument unpersuasive. Pursuant to West Virginia Code § 49-4-610(3)(D), in order to obtain a post-dispositional improvement period after previously receiving an improvement period, a parent must demonstrate a substantial change in

circumstances since the initial improvement period, and "shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period[.]" However, as discussed above, petitioner failed to substantially comply with the terms and conditions of her post-adjudicatory improvement period. Therefore, she failed to demonstrate that she would be likely to substantially comply with the terms and conditions of a post-dispositional improvement period. We find that petitioner is not entitled to relief in this regard.

Further, while petitioner argues that the circuit court erred in terminating her parental rights without considering a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, we find no error in the circuit court's termination of petitioner's parental rights.

Lastly, due to A.W.'s father's ongoing abuse and neglect proceedings, this Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the Court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va.Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including

permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 18, 2017, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: June 11, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.

6